**GLOSTER DUBLIN, Plaintiff**

**v.**

**VIRGIN ISLANDS TELEPHONE CORP., Defendant**

**v.**

**MANNASSAH BUS LINES, INC., AND GOVERNMENT OF THE VIRGIN ISLANDS,**
**Third-party Defendants**

Civil No. 7/1977

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 9, 1978

215

MORTON S. LEVINE, ESQ., St. Thomas, V.I., *for plaintiff*

JEAN-ROBERT ALFRED, ESQ., Christiansted, St. Croix, V.I., *for defendant and third-party plaintiff Virgin Islands Telephone Corporation*

THOMAS M. UTTERBACK, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for the Government of the Virgin Islands*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

This case presents novel and important questions involving the interplay of Rule 14 of the Federal Rules of Civil Procedure and the Virgin Islands Tort Claims Act[1] in the context of a procedural wrangle over defendant's motion to implead the Government of the Virgin Islands as a third-party defendant in an apparently simple tort case.

### I

The plaintiff, Gloster Dublin, alleges that negligently maintained telephone lines belonging to the defendant, Virgin Islands Telephone Company (hereinafter Vitelco), on November 19, 1976, fell on his house causing damage to his property in the amount of $2,800. The complaint was filed January 4, 1977, and was served on defendant's agent on January 24, 1977. Vitelco, after securing an extension of time, filed its answer on April 6, 1977, denying the averments of the complaint and alleging by way of affirmative defense, among others, the supervening acts of some unknown third-party. On September 8, 1977, the defendant moved for leave to serve third-party complaints on Mannassah Bus Lines, Inc. (hereinafter Mannassah) and the Government of the Virgin Islands (hereinafter the Government), alleging in effect that it is entitled to indemnification for any judgment that plaintiff may recover against it.[2] In addition, Vitelco sought leave, pursuant to 33 V.I.C. § 3409, to file a tort claim against the Government out of

---

[1] 33 V.IC. §§ 3408–3413.

[2] The operative paragraphs of defendant's third-party complaint against Mannassah and the Government are:

4. On or about the date of the incident alleged in plaintiff's Complaint, a backhoe owned and operated by the Government of the Virgin Islands Department of Public Works negligently hooked a telephone cable in close proximity to the plaintiff's house, pulling it down to a lower than normal height.

5. Shortly thereafter, a bus owned and operated by defendant Mannassah Bus Lines, Inc., negligently ran into said cable, causing a telephone pole to fall upon plaintiff's roof, causing the damage alleged in plaintiff's Complaint.

time. This was done, according to the defendant, in order to "protect its interests" in the event the court should deem that its claim accrued either at the time of the alleged tort or at the time of service of process and thus was time-barred.

By order dated September 26, 1977, the court granted the defendant/third-party plaintiff leave to bring in Mannassah and ordered the Government to file its opposition, if any, to Vitelco's motion. The Government submitted a memorandum urging this court not to exercise its discretion and to deny Vitelco's motion to file a tort claim out of time. At a hearing on November 9, 1977, the Government also opposed the motion to implead it on the grounds that neither the third-party complaint nor a notice of the claim was filed within 90 days after the claim accrued as required by 33 V.I.C. § 3409(c). Vitelco maintained that its action against the Government was not untimely because, being derivative, Vitelco's claim could not accrue until the plaintiff either obtained a judgment against or recovered from the defendant. Because of the importance of the issues, the court reserved judgment and requested the Government and Vitelco to submit supplemental

6. Third-party defendants owed a duty of reasonable care to plaintiff and to defendant/third-party plaintiff to avoid running into the aforesaid telephone cables, and said duty was breached by the aforesaid negligence of said parties.

7. Defendant/third-party plaintiff at all times maintained its telephone cables in a proper, safe and normal manner.

8. Defendant/third-party plaintiff, Virgin Islands Telephone Corporation, is entitled to recover from the aforesaid third-party defendants, all of what plaintiff, Gloster Dublin, may recover from it on the grounds stated in the preceding paragraphs.

Although the third-party complaint prays solely for indemnification from the third-party defendants, the court construes the defendant's claim as also including a prayer for contribution. This is done because of the importance of the issues that will be considered and because indemnity and contribution claims present similar considerations in the context of the pending motion. Moreover, such an approach is particularly useful in light of the mandate of Rule 54(c) of the Federal Rules of Civil Procedure, 5 V.I.C. App. I, R. 54, made applicable to this court pursuant to 4 V.I.C. § 83 and 5 V.I.C. App. IV, Rule 7, which requires that parties shall be granted the relief to which they are entitled, irrespective of whether it has been prayed for in the complaint. Cf. Rule 15(b) of the Federal Rules, 5 V.I.C. App. I, Rule 15.

memoranda in support of their respective positions within 30 days. On December 12, three days after the deadline, the Government submitted a one and a half page letter, addressed personally to the court, which failed to deal with the issues in any meaningful way. Vitelco failed to submit anything despite repeated inquiries by the court's law clerk.[3]

## II

The court views Vitelco's motion to implead the Government as raising three related issues:

A. By what authority may Vitelco assert a third-party claim for contribution or indemnity against a non-party to the action.

B. If, in fact, Vitelco may assert a claim for contribution or indemnity, what is the nature of that claim and does it sound in tort. (If Vitelco's claim does not sound in tort, it is clear that the Virgin Islands Tort Claims Act of 1971 (hereinafter V.I.T.C.A. or the Act) is inapplicable.)

C. Assuming the applicability of the Virgin Islands Tort Claims Act, when does a claim for contribution or indemnity against the Government accrue.

Before analyzing the issues raised by the pending motion, it is important to settle a subsidiary issue raised at the November 9, 1977, hearing. The Government contended that V.I.T.C.A. was based on the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 1402(b), 2402 and 2674. At that time the court disagreed and expressed the belief that V.I.T.C.A. was modeled after the New York Court of Claims Act (hereinafter N.Y.C.C.A.) 29A Pt. 2 McKinney's Laws §§ 8–12.

■ The question of which act V.I.T.C.A. was patterned after is important because it is well settled in the Virgin Islands that

---

[3] Vitelco's counsel has changed twice since a notice of appearance was filed. In addition, a motion recently was filed by present counsel for leave to withdraw because of the pending liquidation proceedings of Vitelco's insurer and the lack of cooperation from the insurer and the defendant.

the language of a Virgin Islands statute which has been taken from the statutes of another jurisdiction is to be construed to mean what the highest court of the jurisdiction from which it was taken had, prior to its enactment in the Virgin Islands, construed it to mean.

Berkeley v. West Indies Enterprises, Inc., 10 V.I. 619, 625, 480 F.2d 1088, 1092 (3d Cir. 1973); see also Paiewonsky v. Paiewonsky, 8 V.I. 421, 446 F.2d 178 (3d Cir. 1971); Williams v. Dowling, 4 V.I.C. 465, 318 F.2d 642 (3d Cir. 1963); Hendry v. Hendry, 14 V.I. 610 (Terr. Ct. 1978). Decisions subsequent to the enactment of such statutes in the Virgin Islands are persuasive, but not controlling. See Cirino v. Hess Oil Virgin Islands Corp., 9 V.I. 518, 384 F.Supp. 621 (D.V.I. 1973); Hendry v. Hendry, supra; cf. Cintron v. Bermudez, 6 V.I. 692 (D.V.I. 1968).

A study of both statutes, as well as the scant legislative history of the Act, convinces the court that, although there was some intermingling of the federal and New York laws, V.I.T.C.A. primarily was drawn from the New York statute. The present Virgin Islands Tort Claims Act, as codified at 33 V.I.C. § 3408 et seq., was based on Bill No. 5117, which was submitted to the Legislature in April of 1971. Peter J. O'Dea, then Assistant Attorney General for Legislation, began the Senate discussion of the bill with an explanation for its need. At the end of his opening statement he said

The bill itself is patterned after the federal tort claims law.[4]

Aside from this assertion of lineage, support for Mr. O'Dea's position is found in the language of only one section of the Act. Title 33 V.I.C. § 3408 reads:

The Government of the Virgin Islands hereby waives its immunity from liability and action and hereby assumes liability with respect to injury or loss of property or personal injury or

---

[4] Mr. O'Dea's opening statement is reproduced in its entirety by the Third Circuit in its opinion in Silverlight v. Huggins, 10 V.I. 638, 642, 488 F.2d 107, 109 (3d Cir. 1973).

death caused by the negligent or wrongful act or omission of an employee of the Government of the Virgin Islands while acting within the scope of his office or employment, under circumstances where the Government of the Virgin Islands, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The Government consents to have this liability determined in accordance with the same rules of law as applied to actions in the courts of the Virgin Islands against individuals or corporations; Provided, That the claimant complies with the provisions of this chapter.

The underlined language, except for the references to the Virgin Islands Government, is identical to the language of 28 U.S.C. § 1346(b). However, the remainder of the section—that is, that portion that is not underlined—is virtually identical to the language of § 8 of the New York Court of Claims Act. Succeeding sections of V.I.T.C.A. are likewise based on the New York law. Section 3409 is modeled after § 10(1), (2), (3) and (5) of the N.Y.C.C.A.; § 3410 is based on § 11 of the N.Y.C.C.A., prior to its amendment in 1976, and, finally, subsections (a) and (b) of § 3411 of V.I.T.C.A. are taken from § 12(1) and (2) of the N.Y.C.C.A.

█ Although there is nothing in the debate or legislative history of V.I.T.C.A. to suggest that it was, in fact, patterned after its New York equivalent, the resemblances between the two statutes are clear and unmistakeable. Accordingly, decisions of the New York and federal courts construing the Federal Tort Claims Act and the New York Court of Claims Act before enactment of V.I.T.C.A. are controlling to the extent of the similarity of those acts to the Virgin Islands Tort Claims Act, Berkeley v. West Indies Enterprises, Inc., supra; Williams v. Dowling, supra, whereas decisions of those courts subsequent to the enactment of V.I.T.C.A. are only persuasive. Cirino v. Hess Oil Virgin Islands Corp., supra.

## A.

■ Against this backdrop the court turns to the issue of whether Vitelco may assert a claim for contribution or indemnity against a non-party. Vitelco alleges that Rule 14(a) of the Federal Rules of Civil Procedure, 5 V.I.C. App. I, Rule 14, "permits" third party practice.[5] While this statement technically is correct, it creates an erroneous impression. Rule 14 does not "permit" third-party practice in the sense of creating new causes of action which are unrecognized by state substantive law. As one court has said:

Rule 14(a) creates no substantive rights to reimbursement, contribution, or indemnity but merely simplifies procedure, where such a right exists, by allowing its determination at the trial of the original claim.

Handel-Maatschppij H. Albert DeBarry & Co., N.V. v. Faradyne Electronics Corp., 37 F.R.D. 357, 358 (S.D.N.Y. 1964): accord, Colton v̇. Swain, 527 F.2d 296 (7th Cir. 1975); Travelers Insurance Co. v. Busy Electric Corp., 294 F.2d 139 (5th Cir. 1961); D'Onofrio Construction Inc.

---

[5] Rule 14 provides in part:

*Rule 14. Third-Party Practice*
*When defendant may bring in third-party.* At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than 10 days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action. The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants, as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13. . . .

223

v. Recon Co. Inc., 255 F.2d 904 (1st Cir. 1958); 3 Moore's Federal Practice ¶ 14.03 [3] (2d ed. 1976).

■ The primary purpose of Rule 14 is

to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted. The rule guarantees consistent results, saves the time and cost involved in the needless repetition of evidence at a subsequent trial, and prevents the defendant in the original action from being handicapped by the time which may elapse between a judgment against him and a judgment in his favor . . . .

Colton v. Swain, supra, at 299; accord, Behar v. Savard, 21 F.R.D. 367 (S.D.N.Y. 1958); 6 Wright & Miller, Federal Practice and Procedure: Civil § 1442 (1971); 3 Moore's Federal Practice ¶14.04.

■ A defendant's right to assert a claim for contribution or indemnity against a joint tortfeasor by way of a third-party action depends, in the first instance, upon his right to assert such a claim in an independent action. If the defendant lacks such a right under state substantive law he cannot acquire it under Rule 14. Smith v. Whitmore, 270 F.2d 741 (3d Cir. 1959); Gartner v. Lombard Bros., 197 F.2d 53 (3d Cir. 1952); I.C.I. America Inc. v. Martin-Marietta Corp., 368 F.Supp. 1148 (D. Del. 1974); Behar v. Savard, supra; 3 Moore's Federal Practice ¶ 14.03; 28 U.S.C. § 2072. Therefore, the court must turn to the substantive law of the Virgin Islands to determine the source of Vitelco's third-party claims.

The Third Circuit has had occasion to rule on the question of a defendant's right to contribution from a nonparty joint tortfeasor and has held that such a right exists in the Virgin Islands. Gomes v. Brodhurst, 394 F.2d 467 (3d Cir. 1968).[6] Moreover, since 1973 joint tortfeasors

---

[6] This holding is in direct conflict with the Restatement of Restitution § 102 (1937), which denies the right of contribution to joint tortfeasors. Presumably the court's attention was not directed to this section because the court did not address the question of whether § 102, pursuant to

who are named as co-defendants in an action are liable to one another for contribution "for that proportion of the verdict as the trier of fact has apportioned against such defendant." 5 V.I.C. § 1451(d); see also, Lentz v. Freeman Associates Caribbean, Inc., et al., 441 F.Supp. 892 (D.V.I. 1977).[7] Finally, the Restatement (Second) of Torts § 886A (Tentative Draft No. 16, approved 1970), which in the absence of local law to the contrary is the rule of decision in the Virgin Islands courts, 1 V.I.C. § 4, recognizes a right to contribution among joint tortfeasors.[8]

■■■■ Although neither Gomes, supra, nor 5 V.I.C. § 1451 addresses the issue of a right to indemnity among

---

1 V.I.C. § 4, would have been otherwise applicable to the Virgin Islands. Certainly, as Gomes v. Brodhurst, supra, indicates, the court would have been justified in its refusal to enforce § 102 since the rule of that section is unduly harsh and, as revealed by Comment a to § 102, is explainable "only on historical grounds." Moreover, the American Law Institute has recently reversed its position on this subject and now endorses recognition of a right to contribution. Restatement (Second) of Torts § 886A (Tentative Draft No. 16, approved 1970). See discussion infra and footnote 8 for text.

[7] Although 5 V.I.C. § 1451 does not address the issue of a defendant's right to assert a claim for contribution against a nonparty either during or after entry of judgment in the main action, the legislative intent is clear. If parties joined as co-defendants may assert a right of contribution against each other there is no persuasive reason as to why a defendant may not do likewise against a third-party. The defendant's substantive right to contribution should not be made to depend on the vagaries of whom the plaintiff elects to sue. In any event, Gomes v. Brodhurst, supra, is dispositive of the issue.

[8] *886A Contribution Among Tortfeasors*

(1) Except as stated in subsections (2), (3), (4) [and (5)], where two or more persons become liable in tort to the same persons for the same harm, there is a right of contribution among them, even though judgment has not been recovered against any or all of them.

(2) The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of such share. No tortfeasor can be required to make contribution beyond his own equitable share.

(3) There is no right of contribution in favor of any tortfeasor who has intentionally or recklessly caused the harm.

(4) Where one tortfeasor has a right of indemnity against another, neither of them has a right of contribution against the other.

[(5) A release of one tortfeasor from liability for the harm, or a covenant not to sue him for it, discharges him from all liability for contribution, but payments made by him in settlement must be taken into account in determining contribution among other tortfeasors.]

225

joint tortfeasors, the court concludes that there also is ample authority for recognition of such a right. Both the Restatement of Restitution §§ 76, 95 and 97 and the Restatement (Second) of Torts § 886B (Tentative Draft No. 18, 1972) recognize a right to indemnification from a joint tortfeasor in cases similar to the one at bar.[9] Although this ordinarily would be dispositive of the issue, 1 V.I.C. § 4 and Varlack v. S.W.C. Caribbean, Inc., 550 F.2d 171 (3d Cir. 1977), it is not without significance that public policy dictates a like result. The policy considerations that prompted the court in Gomes to recognize a right to contribution are equally applicable, if not more so, to indemnity, which has received a far greater acceptance at common law. See Comment a to § 886B, supra; United Air Lines, Inc. v. Weiner, 335 F.2d 379, 398 (9th Cir 1964), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452 (1964). Finally, the Third Circuit was untroubled by a defendant's assertion of a right to indemnity from the Government in Silverlight v. Huggins, 10 V.I. 638, 488 F.2d 107 (3d Cir 1973). In fact, the court did not even pause to consider the nature of the right or to determine whether it existed under Virgin Islands law. It appears that the Third Circuit simply

---

[9] § *886B Indemnity Between Tortfeasors.*

(1) If two persons are liable in tort to a third person for the same harm, and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

(2) Instances in which indemnity is granted under this principle include the following:

(a) The indemnitee was liable only vicariously for the conduct of the indemnitor;

(b) The indemnitee acted pursuant to directions of the indemnitor, and reasonably believed the directions to be lawful;

(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he reasonably relied;

(d) The indemnitor supplied a defective chattel, or performed defective work upon land or buildings, as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

(e) The indemnitor created a dangerous condition of land or chattels, as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect.

(f) The indemnitor was under a duty to the indemnitee to protect him against the liability to the third person.

assumed that the right existed, and that it existed against the Government, although the claim was disallowed because of the Government's immunity from suit on the day of its alleged tortious conduct. Accordingly, the court concludes that a right to contribution or indemnity against a joint tortfeasor exists in the Virgin Islands. Since the Government, pursuant to 33 V.I.C. § 3408,[10] has consented to have its liability determined as "if a private person" it likewise is amenable to a suit for contribution or indemnity as a joint tortfeasor.[11]

■■ The only remaining point on this issue is whether a party may assert its claim for contribution or indemnity against the Government by way of impleader. V.I.T.C.A. requires that the Government's liability be determined "in accordance with the law of the place where the act or omission occurred." The law of the Virgin Islands includes the Federal Rules of Civil Procedure; § 25 of the Revised Organic Act of 1954; see also 4 V.I.C. § 83; 5 V.I.C. App. IV, Rule 7. As the Supreme Court has said with respect to the amenability of the United States

---

[10] See text supra at 221.

[11] See Dalehite v. United States, 346 U.S. 15, 30–31 (1963):

"The language of the [Federal Tort Claims] Act makes the United States liable 'respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances' 28 U.S.C. § 2674. This statute is another example of the progressive relaxation by legislative enactment of the rigor of the immunity rule. Through such statutes that change the law organized government expresses the social purposes that motivate its legislation."

The court believes that the similarity of the language and intent of V.I.T.C.A. with that of the Federal Tort Claims Act inescapably leads to the conclusion that the Government, with the exception of the statutorily enunciated conditions, is to be treated exactly as any other defendant. Similar language is also found in § 8 of N.Y.C.C.A., pursuant to which the New York courts have said:

"[i]n other words, in each case the test now is whether an individual or private corporation, assuming that he or it were obligated to discharge the governmental duty involved, would be liable to the injured person for a breach of that duty."

Collins v. City of New York, 11 Misc.2d 76, 171 N.Y.S.2d 710, 712 (Sup. Ct. 1958), aff'd, 8 A.D.2d 613, 185 N.Y.S.2d 740 (1959) aff'd, 7 N.Y.2d 822, 164 N.E.2d 719, 196 N.Y.S.2d 700 (1959), quoting Runkel v. City of New York, 282 App. Div. 173, 178, 123 N.Y.S.2d 485, 490 (1953).

to impleader on a claim for contribution under the Federal Tort Claims Act:

> The government contends that, even if the Federal Tort Claims Act carries the Government's consent to be sued in a separate action for contribution due a joint tortfeasor, it does not carry consent to be impleaded as a third-party defendant to meet such a claim.
>
> We find nothing in the nature of the rights and obligations of joint tortfeasors to require such a procedural distinction, nor does the Act state such a requirement. On the contrary, the Act expressly makes the Federal Rules of Civil Procedure applicable and Rule 14 provides for third-party practice.

United States v. Yellow Cab Co., 340 U.S. 543, 553, 71 S.Ct. 399, 406 (1951). The court therefore holds that a defendant may assert a claim for contribution or indemnity against the Government by way of impleader in accordance with Rule 14 of the Federal Rules of Civil Procedure.

## B.

The next question is whether a claim for contribution or indemnity sounds in contract or in tort. If it sounds in tort, V.I.T.C.A. and its applicable limitations apply. The parties in the case sub judice have proceeded on the assumption that the third-party claim sounds in tort and that the 90-day filing requirement of 33 V.I.C. § 3409(c) is applicable. Were it otherwise, and the third-party complaint sounded in contract, the applicable statute of limitations would be six years pursuant to 5 V.I.C. § 31(3)(A),[12] and thus the third-party complaint would be timely.

---

[12] Section 31 reads in part:

> Civil actions shall only be commenced within the periods prescribed below after the cause of action shall have accrued, except where, in special cases, a different limitation is prescribed by statute:
>
> . . . .
>
> (3) Six years
>
> (A) An action upon a contract for liability, *express or implied.* . . . (Emphasis added.)
>
> Actions in contract against the Government are permitted pursuant to § 2(b) of the Revised Organic Act of 1954, prec. 1 V.I.C., 48 U.S.C.

The decided weight of authority views claims for contribution or indemnity as being founded on implied contract. The Supreme Court of Oregon stated with respect to a cause of action in indemnity:

This court has classified a common-law action for indemnity as an action on an implied contract. The implied promise is a fiction created by the law courts in order to provide a remedy previously available only in equity. It is true that an indemnitor's liability is not consensual, but is imposed by the courts on equitable principles. In modern terms, the indemnitee's right is "quasi-contractual." (Citations omitted.)

Owings v. Rose, 262 Or. 247, 497 P.2d 1183, 1190, 57 A.L.R.3d 821, 831–32 (1972). Consequently, the court held that the six year statute of limitations applicable to contracts governed a claim for indemnity, rather than the two year tort statute.[13]

The Supreme Court of Wisconsin has addressed the problem posed by actions for contribution, and it reached a similar conclusion.

In view of our consistent position that a cause of action for contribution is unaffected by the underlying transaction, we hold that the cause of action for contribution between joint tortfeasors is similarly based on a contract implied at law to rectify the inequity resulting when one tortfeasor pays more than his share of a common liability. The statute of limitations relating to implied contract is, therefore, applicable to an action for contribution between joint tortfeasors.[14]

---

§ 1541(b). There is nothing to suggest that the general statute of limitations applicable to contract actions against private defendants is not equally applicable to suits against the Government.

[13] The Oregon statutes, O.R.S. 02.110(1) (the tort statute of limitation) and O.R.S. 12.080 (the contract statute of limitation), as reproduced in the court's opinion, are nearly identical to § 31(3)(A), set out in footnote 12 supra, and 5 V.I.C. § 31(5)(A), the Virgin Islands tort statute of limitations. This is not surprising because the present Virgin Islands Code is based on the 1921 Codes of the Municipality of St. Thomas and St. John. The 1921 Codes were lifted from the Compiled Laws of the Territory of Alaska, 1913, which were taken from the laws of Oregon. See generally, James v. Henry, 3 V.I. 272, 157 F.Supp. 226 (D.V.I. 1957).

[14] The Wisconsin statute of limitations for implied contracts was six years at the time.

State Farm Mutual Automobile Insurance Co. v. Schara, 56 Wisc.2d 262, 201 N.W.2d 758, 760–61, 57 A.L.R.3d 922, 926 (1972). The position taken by the courts in Wisconsin and Oregon, as noted, is in accordance with the majority view. See generally Annos. at 57 A.L.R.3d 833, 57 A.L.R.3d 867, and 57 A.L.R.3d 927 (1972).

▮ The court agrees with the majority view that actions for indemnity and contribution are distinct from the underlying causes of actions on which they are based.[15] The court, however, cannot accede to the majority view as expressed by the Oregon and Wisconsin courts, that the third-party plaintiff's cause of action in cases similar to the one at issue sounds in implied contract. Such a holding would be illogical and justifiable only on ill-founded historical notions.[16]

▮ The two third parties owed a duty of reasonable care with respect to Vitelco's cables. Pursuant to § 886B(2)(e) of the Restatement (Second) of Torts (Tentative Draft No. 18, 1972), they were under a duty not to create "a dangerous condition of . . . chattels, as a result of which" Vitelco might be liable to the plaintiff. In addition, Mannassah and the Government were under a general duty to protect Vitelco from liability to third persons.

---

[15] Procedurally, a third-party complaint may not simply repeat the allegations of the plaintiff's complaint and allege that the third-party defendant is liable to the plaintiff. Instead, the defendant must allege that the third party is or may be liable to *him* for all or a part of the liability that may be imposed on him in the main action. ICI America, Inc. v. Martin-Marietta Corp., supra, at 1151; Lincoln Gateway Realty Co. v. Carri-Craft, Inc., 53 F.R.D. 303 (W.D. Mo. 1971); Schwab v. Erie Lackawanna R.R. Co., 48 F.R.D. 442 (W.D. Pa. 1970), rev'd on other grounds, 438 F.2d 62 (3d Cir. 1971); Wolfe v. Johnson, 21 F.R.D. 280 (N.D. W.Va. 1958); Andrew v. Carvalho, 14 V.I. 513 (Terr. Ct. 1978). See also Gold Lust, Inc. v. Newman, Civil No. 77-76 (D.V.I., Div. St. T. & St. J., November 3, 1977). There is no claim here that the proposed third-party complaint is procedurally defective.

[16] It also would be in denigration of the strong public policy of the Virgin Islands against the presentation of stale claims against the Government based on tortious injury to persons or property. See discussion infra.

§ 886B(2)(f).[17] By their alleged negligent acts and omissions, the Government and Mannassah allegedly exposed Vitelco to liability to Mr. Dublin for injuries to his property. Those alleged acts and omissions gave rise to Vitelco's own independent claim for damages for tortious interference with its property. Finally, both third parties were amenable in the first instance to a suit by the plaintiff based on tort. The entire action is cut from whole cloth, so to speak, and has as its underlying basis the alleged tortious interference with the plaintiff's property. Where the conduct giving rise to both the plaintiff's claim for damages and defendant's claim for contribution or indemnity against the Government is tortious, and is founded on a third-party's breach of a duty of due care with respect to another's property, this court holds that the defendant's claim for contribution or indemnity, no less than the plaintiff's, sounds in tort.[18]

---

[17] The insertion of sections dealing with contribution and indemnity in the draft Restatement (Second) of Torts is a good indication of the belief of the American Law Institute that actions founded on such claims sound in tort rather than in implied contract. This is a relatively new development. The first Restatement of Torts was silent on contribution and indemnity, those subjects having been dealt with in the Restatement of Restitution where they were classified as equitable actions based on restitutionary concepts. In the Reporter's notes to the Institute Restatement (Second) of Torts § 886A, Tentative Draft No. 16, 1970, at 194–95, the following appears:

"The Reporter feels that contribution is so traditionally a tort problem, like release, that there should be some statement here . . . .

[A]nd even if the question is finally to be left to that Restatement [Restitution] the present drafting group appears to be a proper one to raise with the Institute the question of a change. It may be said without undue conceit that the Tort Advisors muster considerably more information and ideas about the problem than is likely to be mustered in any Restitution group.

. . .

The Council have agreed that a contribution section should be included in torts."

The court is thus in accord with the Institute's characterization of contribution and indemnity claims (in situations such as the present one) as claims sounding in tort.

[18] The United States Supreme Court, in construing United States v. Yellow Cab, supra, has implicitly drawn the same conclusion with respect to an action against the United States for contribution where the underlying action sounds in tort. See United States v. Gilman, 347 U.S. 507, 74 S.Ct. 693 (1954).

■ There are other important grounds for the court's decision. The strong public policy of the Virgin Islands with respect to tort claims against the Government, as expressed by the 90-day notice provision, argues against the presentation of stale claims. 33 V.I.C. § 3409. The public policy embodied by our statute is analogous to the policy behind a statute of limitations.

The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend. Statutes of limitation are founded upon the general experience of mankind that claims which are valid are not usually allowed to remain neglected if the right to sue thereon exists. Statutes of limitation are designated to prevent undue delay in bringing suit on claims and to suppress fraudulent and stale claims from being asserted, to the surprise of the parties or their representatives, when all the proper vouchers and evidence are lost, or the facts have become obscure from the lapse of time or the defective memory or death or removal of witnesses. . . .

. . . .

Viewed broadly, however, statutes of limitation embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs. Thus, statutes of limitation rest upon reasons of sound public policy in that they tend to promote the peace and welfare of society, safeguard against fraud and oppression, and compel the settlement of claims within a reasonable period after their origin and while the evidence remains fresh in the memory of the witnesses.

51 Am.Jur.2d Limitation of Actions, §§ 17, 18 (1970); accord, 53 C.J.S. Limitations of Actions, § 1; see also Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 64 S.Ct. 582 (1944); cf. D'Onofrio Construction Co., Inc. v. Recon Co., Inc., supra.

Characteristically, the statute of limitations applicable to tort actions is shorter than that applicable to contracts. The reason for this is apparent. Unlike a breach of contract, it is with rare exceptions that tortious conduct

founded on negligence is subject to documentation. Generally, the proof rests on the testimony of the parties and their witnesses. The longer the delay of the plaintiff in the institution of his suit, the greater the likelihood that the evidence will be lost, memories blurred, or the witnesses become altogether unavailable. Potential defendants, therefore, rightly are protected from the fear of litigation by the requirement that the injured party act with due diligence. Although the reasons for the limitations are the same with respect to contract and tort actions, the need for a shorter period of limitation is more justifiable when the action sounds in tort.

 Present Virgin Islands law allows six years before the plaintiff is barred from prosecuting his contract claim, whether against the Government or a private party. See note 12 supra. A tort claim, however, must be commenced within two years of the date of injury, one third the amount of time allowed for contract claims. 5 V.I.C. § 31(5)(A). In the case of suits against the Government only 90 days are allowed for filing a claim from the date of its accrual.[19] This is one-eighth the amount of time allowed for tort actions against individual or corporate defendants and a mere one twenty-fourth of the time allowed for contract actions against any defendant. The court believes that the 90-day notice requirement embodied in 33 V.I.C. § 3409 expresses the strong policy of this jurisdiction that tort actions against the Government are

---

[19] Two years are allowed for filing a claim if the claimant files a written notice of intention to file a claim within 90 days of its accrual. 33 V.I.C. § 3409(c). If the claimant fails to file either a claim or a notice of intention to file he may still, within two years from the date of accrual of his claim, apply to the court for permission to file a claim. The application to the court must be supported by an affidavit that demonstrates a reasonable excuse for failing to file the notice of intention and must show that the Government had actual knowledge of the facts constituting the claim before the expiration of the time for filing the notice of intention. In addition, the claim proposed to be filed must accompany the application and the court must be satisfied that the Government will not be substantially prejudiced by permitting a late filing.

to be filed promptly and prosecuted diligently. Failure to so act will result in the plaintiff being denied access to the courts.

Moreover, to hold that Vitelco's cause of action is based on implied contract would be to elevate legal fiction over the legislatively expressed public policy of the Territory. It necessarily would mean that the Virgin Islands would be amenable to a third-party complaint for contribution or indemnity where the underlying action was in tort for conduct that occurred before its waiver of sovereign immunity. This would allow a plaintiff, unable to sue the Government directly, to accomplish by indirection what would otherwise have been prohibited. This would run directly counter to the holding in Silverlight v. Huggins, supra, where the Third Circuit held that if the plaintiff was incapable of suing the Government directly, the third party plaintiff also was barred from maintaining an action for contribution or indemnity against the Government. 10 V.I. at 646, 488 F.2d at 111; accord, Newport Air Park, Inc. v. United States, 419 F.2d 342 (1st Cir. 1969) ("tort immunity yields contribution immunity," Coffin, J. concurring, id. at 348). Any different holding would have unseemly and unjust results.

The court's position, while not generally adopted, has not gone unrecognized. In the Oregon and Wisconsin cases cited above, both courts recognized the anomaly created by their decisions. Those courts, however, justified the results reached by reliance on precedent. In Owings v. Rose, supra, the court said:

[a]lthough it may be incongruous to require a tort action to be brought within two years and permit an indemnity action based on essentially the same facts to be brought at any time within six years after payment of the tort claim, the theory that indemnity is based on an implied contract is well established. As the legislature, in the statute of limitation, specifically provided for implied

234

contracts, we think the statute should be held to cover indemnity actions.

497 P.2d at 1190, 57 A.L.R.3d at 832. In State Farm Mutual Automobile Ins. Co. v. Schara, supra, the court said:

> While we find precedent for holding that an action for contribution is in the nature of one of contract implied in law and is subject to the period of limitations appropriate to that type of action, we are not satisfied that such a lengthy period within which to bring suit best serves the public interest.
>
> Defendant correctly points out that, where the right of contribution arises not out of a prior judgment allocating the comparative negligence but stems from a compromise settlement, an inordinate period of time may well elapse before the proportional responsibility of the negligent tortfeasors is determined. Under the facts of this case, the action for contribution could be commenced almost nine years after the date of the accident.
>
> The Legislature may well find that the public interest in avoiding stale claims and in protecting parties from suits brought too late to effectively investigate the facts may dictate a shorter period for the commencement of a contribution suit when the underlying cause of action sounds in tort. We invite the legislature's attention to the proposed "Uniform Contribution Among Tortfeasors Act." 9 Uniform Laws Annot. (1967 Supplement), page 130, which suggests in general that actions for contribution based on tort be brought within one year of the accrual of the cause of action.

201 N.W.2d at 761, 57 A.L.R.3d at 926.

This court chooses not to follow the acquiescence of the Wisconsin and Oregon courts to precedent. The court finds that the illogical result reached by those courts and the strong Virgin Islands public policy against stale claims demand a holding that claims for contribution or indemnity against the Government sound in tort for statute of limitations purposes. Moreover, the cited cases did not involve claims against the state and, therefore, are distinguishable. In any event, since this issue presents

235

a case of first impression in this jurisdiction, the court is free to choose the better rule. LaPlace v. Sun Insurance Office, Ltd., 7 V.I. 310, 314, 298 F.Supp. 764, 766 (D.V.I. 1969).[20] Accordingly, the court holds that where a third-party complaint for contribution or indemnity is filed against the Government of the Virgin Islands and the underlying action sounds in tort, the third-party complaint sounds in tort for the purpose of the 90-day filing requirement.[21] A claim for contribution or indemnity is a claim "to recover damages for injuries to property" within the meaning of 33 V.I.C. § 3409(c), and thus the 90-day limitation period of 33 V.I.C. § 3409(c) is fully applicable to Vitelco's claim against the Government.

## C.

The final question is when a claim for contribution or indemnity "accrues" within the meaning of 33 V.I.C. § 3409(c). The court has made a careful study of the reported New York cases with a view toward adoption of

---

[20] The court notes the order of Judge Young in Camacho v. Hess Oil Virgin Islands Corp., —V.I.—, —F.Supp.—(D.V.I. 1977). Nothing in that case is either dispositive or to the contrary of this court's decision. In Camacho leave was granted the third-party plaintiff to file an amended verified third-party complaint against the Government. The court's order is as follows:

"The court further finds that the notice provisions of 33 V.I.C. § 3409 are not applicable to situations involving third-party complaints. Finally, the court finds that even if Section 3409 did apply to situations involving third-party complaint, [sic] Hess has shown reasonable excuse for the failure to file such notice and the Government has not been substantially prejudiced by said failure to file" (citations omitted).

This court construes the Camacho holding narrowly. The district court did not decide whether a claim for contribution or indemnity sounds in tort or in contract. Nor did it decide when such claims accrue, or whether the filing, service and content provisions of 33 V.I.C. § 3410 are applicable to such claims when they do accrue. The district court merely allowed the defendant to amend its third-party complaint even though it had been served on the Government approximately eighteen months after the date of injury and six months after the date of service on the defendants.

[21] It should be clear, however, that this holding is limited to the facts in this case, and to cases involving third-party actions for contribution or indemnity against the Government of the Virgin Islands arising out of a tortious claim. The court expresses no view as to the appropriate statute of limitations where parties other than the Government are impleaded on contribution or indemnity claims.

the best rule. No decision has been found on point that was rendered before the enactment of V.I.T.C.A. In two New York cases decided after V.I.T.C.A.'s enactment, Leibowitz v. State, 82 Misc.2d 424, 371 N.Y.S.2d 110 (Ct. Cl. 1975), and Bay Ridge Air Rights, Inc. v. State, 84 Misc.2d 801, 376 N.Y.S.2d 895 (Ct. Cl. 1975), the New York Court of Claims held that although claims for contribution or indemnity do not sound in tort, the crucial time for measuring the notice requirement was the occurrence of the tortious event. Although the court recognized that this result was "harsh" it found itself without discretion to rule otherwise in the absence of express authority from the legislature.

 This court believes that such a result is more than harsh; it is both inconsistent and fundamentally unfair. The inconsistency of the New York court's position is easily revealed. If an action for contribution is not one sounding in tort, as the court held, then how may it be said to accrue on the happening of the tortious event? The unfairness of the position is as easily exposed. In the Virgin Islands, as elsewhere, the plaintiff may wait up to two years from the date of injury before bringing an action against a defendant. The potential defendant, however, must assert his claim against the Government within 90 days or be barred from recovery absent special permission from the court. By waiting more than 90 days, either by design or indifference, before bringing an action, the plaintiff effectively can preclude the defendant from recovering on a third-party claim against the Government.[22] As a matter of fundamental fairness the defend-

---

[22] One possible solution to this dilemma, posed in the form of a hypothetical by the court in Berlin & Jones, Inc. v. State, 85 Misc.2d 970, 381 N.Y.S.2d 778 (Ct Cl. 1976), discussed infra, is for the potential defendant to initiate suit against the potential third-party defendant if it appears likely that the injured party will sue after the statute runs against the defendant. This leads, as the court so charitably remarked, to an anomalous situation whereby a potential defendant, denominated as "A,"

ant's right to assert a claim for contribution or indemnity—a right granted by statute (as in New York) or by case law (as in the Virgin Islands)—should not be made to depend on the vagaries of a plaintiff's timeliness in asserting his claim, particularly when he neither is induced nor obligated to do so within the same time frame as the defendant.[23] The court does not believe that the Legislature, having once waived the Government's immunity from suit, intended such an irrational and unfair result.

> No sensible reason can be imagined why the state, having consented to be sued, should thus paralyze the remedy. . . . The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced.

Anderson v. Hayes Construction Co., 243 N.Y. 140, 147, 153 N.E. 28, 29–30 (1926) (per Cardozo, J.) (quoted approvingly by the Supreme Court as reflecting "the congressional attitude in passing the [Federal] Tort Claims Act," United States v. Yellow Cab Co., supra, 340 U.S. at 554; cf. the Third Circuit's reliance on the quoted language, Silverlight v. Huggins, supra, 10 V.I. at 647, 488 F.2d at 110.) The court concludes that neither Leibowitz, supra, nor Bay Ridge, supra, are controlling because they were decided subsequent to V.I.T.C.A.'s enactment. Cirino v. Hess Oil, supra. Consequently, for the reasons expressed above, the court chooses not to follow them.[24]

---

"might be forced to sue the state for contribution before he was sued by 'B' [the injured party] . . . 'A' might be forced to make admissions (the suit itself might be considered an admission) in his prospective suit against the State; or 'A' might be forced to sue the State and then wait a portion or all of the three years of the statute of limitations (CPLR § 214) [applicable to the plaintiff's suit] plus the preparation, calendar, trial, and appeal time of the main action before his claim could be prosecuted, and the court would have to calendar 'A's case for that period." 381 N.Y.S.2d at 781. This gave rise, as the New York Court recognized, to "illogical and unreasonable results." Id.

[23] See e.g., 6 Wright & Miller: Civil § 1447, at 260.

[24] Moreover, Leibowitz and Bay Ridge are not the rule of law in New York as other New York courts have also rejected their reasoning and holdings. One court has found the date of satisfaction and judgment to be the better

Having rejected the date of the occurrence of the tort as the date on which a cause of action for indemnity or contribution accrues, several alternatives remain. Among these are the date of service on the defendant in the main action, entry of judgment against the defendant, or the date of payment of more than the defendant's pro rata share to the plaintiff.

The date of service on the defendant admittedly is attractive and neatly comports with the policy behind V.I.T.C.A.'s 90-day filing requirement. Under such a theory failure of the defendant to implead a third-party within 90 days of the date of service of process on him by the plaintiff would result in the statute cutting off his rights. This is, in fact, the alternative suggested by the Government and, not surprisingly, would serve to cut-off Vitelco's third-party complaint in the case at bar. The court, however, can find absolutely no authority for this proposition nor has the Government been able to cite it to any, and accordingly it is discounted.

Of the two remaining alternatives, the entry of judgment or the satisfaction of judgment, the court believes that entry of judgment is the better date from which the 90-day period of 33 V.I.C. § 3409 should begin to run.[25] However, under either alternative the third-

---

rule, Berlin & Jones, Inc. v. State, supra, while another has declared it is either the date of judgment or the satisfaction thereon. Gates Chili v. State, 389 N.Y.S.2d 7 ( 1976).

[25] Often there is a great lapse of time between the entry of judgment and satisfaction thereon by the defendant. To further delay the date of accrual of a claim for contribution by the spectre

"of motions addressed to judgments, appeals and cross-appeals therefrom to . . . appellate tribunals would result in further . . . delay . . . of several years which by its very recognition, is so overbearing in prejudice that it can neither be countenanced nor permitted."

O'Sullivan v. State, 371 N.Y.S.2d 766, 778 (Ct. Cl. 1975); see also Otis Elevator Co. v. State, 52 A.D.2d 380, 383 N.Y.S.2d 920 (1976); Chartrand v. State, 46 A.D.2d 942, 362 N.Y.S.2d 237 (1974); Bronxville Palmer, Ltd. v. State, 36 A.D.2d 647, 318 N.Y.S.2d 412 (1971); Winn v. Peter Bratti Associates, 80 Misc.2d 756, 364 N.Y.S.2d 137 (1975); Davis v. State, 84 Misc.2d 597, 372 N.Y.S.2d 385 (Ct. Cl. 1975); Terry Contracting Inc. v. State, 51 Misc.2d 545, 273 N.Y.S.2d 528 (Ct. Cl. 1966). Contra,

party complaint is timely here. As a result the court need not decide this issue, and leave shall be granted the defendant to implead the Government of the Virgin Islands. Leave shall be conditioned, however, upon Vitelco's compliance with 33 V.I.C. § 3410. Isaac v. Woolworth Department Store, — V.I. — , — F. Supp. — (D.V.I. 1978); George v. Boynes, 13 V.I. 582, 435 F.Supp. 995 (D.V.I. 1977).[26]

Berlin & Jones, Inc. v. State, supra; cf. Restatement (Second) Torts, §§ 886A(2) and B(1) (Tentative Draft Nos. 16 and 18); but see Murray v. Beloit Power Systems, Inc., —V.I. —(D.V.I. 1978).

[26] 33 V.I.C. § 3410 applies to a claim and a notice of intention to file a claim as well as to a complaint that is filed with a court. George v. Boynes, 13 V.I. 582 (D.V.I. 1977). This court is of the belief that a claim as used throughout V.I.T.C.A. is synonymous with a complaint as envisioned by Rules 3, 7, and 8 of the Federal Rules of Civil Procedure. The court is of this belief because, as pointed out supra, V.I.T.C.A. is based primarily on the New York Court of Claims Act, under which a cause of action is initiated in the New York Court of Claims by filing a "claim" as distinguished from a "complaint." See § 11 N.Y.C.C.A. Where the defendant elects to implead the Government prior to the accrual of his claim he must comply strictly with the provisions of 33 V.I.C. § 3410, which are mandatory. George v. Boynes, supra. This will ensure that the defendant third-party is accorded no greater rights when he proceeds pursuant to Rule 14 than he would have had if he had elected to bring an independent action after the judgment or satisfaction.